Filed 12/22/23  P. v. Alvarez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ALVAREZ,<br><br>Defendant and Appellant. | H050011<br>(Santa Clara County<br>Super. Ct. No. C1359497) |

## I.  INTRODUCTION

In July 2017, a jury convicted defendant Robert Alvarez of first degree murder and three counts of second degree robbery (Pen. Code, §§ 187, 211, 212.5, subd. (c)).[1]  The jury found true the allegations that defendant committed the murder and one of the robberies for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C), (5)), and that the murder was committed while defendant was engaged in or was an accomplice in a robbery (§ 190.2, subd. (a)(17)).  The jury found not true allegations that defendant personally used a deadly and dangerous weapon (a knife) in the commission of the murder and one of the robberies (§ 12022, subd. (b)(1)), along with finding gang allegations for the remaining two robbery counts not true.  The trial court found defendant had suffered two prior strike convictions and

_____

[1] All further statutory references are to the Penal Code.

sentenced defendant to life without the possibility of parole, consecutive to a term of 50 years to life, consecutive to another six-year term. This court affirmed the judgment. (*People v. Alvarez* (Apr. 23, 2020, H045451) [nonpub. opn.].)

In October 2021, defendant petitioned for resentencing under section 1170.95 (now section 1172.6.)[2] Following briefing, the trial court denied the petition, finding defendant failed to establish a prima facie case of entitlement to relief under the statute.

Defendant appeals the trial court's denial of his petition. For reasons we will explain, we will affirm the trial court's denial of defendant's petition.

## II. BACKGROUND

### A. *Factual Summary*

The trial court's ruling denying defendant's petition was not based on the evidence regarding the charged offenses. Our resolution of this matter also does not require an analysis of the evidence from defendant's trial. Thus, we provide only a brief summary of the factual background in this matter.[3]

On the evening of June 12, 2013, defendant, Christopher M., and their girlfriends drove to multiple convenience stores in San Jose. Defendant and Christopher M. took alcohol from the stores without paying for it. At one of the stores, a clerk asked defendant and Christopher M. to pay for the alcohol, and Christopher M. cursed at the clerk, displayed a knife, and threatened the clerk before the two left without paying for the alcohol. Over the course of the night, defendant became extremely drunk. Later, the group stopped their vehicle, and defendant and Christopher M. got out. A short time later, defendant and Christopher M. returned to the vehicle. One of the women in the car testified that she heard yelling and that she saw Christopher M. and defendant assaulting

---

[2] For ease of reference, we will refer to this statute by its current designation, section 1172.6.

[3] This court granted defendant's request to take judicial notice of the record in defendant's direct appeal and the docket from defendant's trial.

2

a man who was lying in the street.  The woman testified that she saw Christopher M. kicking the man and defendant swinging his arms at the man, and that when defendant got back in the car, he was holding a bloody knife.  Police later found a man dead in the area where defendant and Christopher M. had been when the vehicle stopped.  An autopsy revealed the victim died from multiple blunt and sharp force injuries.  An investigation revealed a knife with a 10-inch blade wrapped in a shirt at defendant's residence, along with other items such as a melted cellphone and a partially burned checkbook with the deceased's name on it.  The investigation also found text messages from defendant to another person the day after the stabbing, asking for assistance because "some shit happened."  The prosecution introduced expert opinion of defendant's and Christopher M.'s membership in the Norteño gang organization.

### B. *Procedural History*

This court affirmed the judgment in defendant's direct appeal, rejecting defendant's claims of evidentiary error, prosecutorial misconduct, instructional error, insufficiency of the evidence, and cumulative error.  (*People v. Alvarez*, *supra*, H045451.)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, imposing "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides."  (Stats. 2018, ch. 1015, § 1, subd. (b).)  Senate Bill 1437 added section 1172.6, which provides an avenue for a person convicted in a case involving felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and to be resentenced.

Defendant petitioned for relief under section 1172.6, declaring that he was convicted of felony murder or murder under the natural and probable consequences doctrine and that he could not now be convicted of murder because of subsequent changes to sections 188 and 189.  The prosecution opposed the petition, arguing that the jury made its true finding on the robbery-murder special circumstance allegation after the

California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and therefore defendant was ineligible for relief as a matter of law because the record of conviction showed he was "the actual killer, acted with the intent to kill, aided and abetted the actual killer in the commission of the murder, or was a major participant acting with reckless indifference to human life." Defendant responded that the robbery-murder special circumstance finding did not preclude entitlement to section 1172.6 relief because the elements of issue preclusion were not met.

The trial court denied the petition, ruling that defendant did not establish a prima facie showing of entitlement to section 1172.6 relief. Nothing in the appellate record indicates the trial court conducted a hearing before issuing its ruling. The trial court noted the jury was instructed pursuant to CALCRIM No. 703 that "it could not find the robbery-murder special circumstance true unless it was satisfied beyond a reasonable doubt that [defendant] intended to kill or he was a major participant in the crime, and when he participated in the crime, he acted with reckless indifference to human life." The trial court observed that defendant's conviction came after *Banks* and *Clark*, and that the relevant law had not changed between the *Banks* and *Clark* decisions and the enactment of Senate Bill 1437. Thus, the trial court stated, "by finding the felony murder special circumstances true, [defendant's] jury made precisely the same findings it would be required to make in order to convict him of felony murder under current law."

### III. DISCUSSION

Defendant contends that the trial court erred by denying his petition at the prima facie stage. Defendant preliminarily asserts that the jury found not true the allegation that he used a deadly and dangerous weapon (a knife) in the murder and robbery, and thus he was convicted under a felony murder theory. Defendant then raises four arguments in support of his position that the trial court erred in denying his petition at the prima facie stage. First, he argues that because the trial court failed to conduct a hearing on his

4

petition, the trial court's order dismissing the petition was "a nullity in excess of its jurisdiction." Second, defendant argues that the robbery-murder special circumstance finding could not be used to determine that he was ineligible for section 1172.6 relief as a matter of law, because the elements of issue preclusion are not met in this situation. Third, and related to his second argument, defendant asserts that the jury's true finding on the robbery-murder special circumstance allegation does not render him categorically ineligible for section 1172.6 relief because the jury instructions left open the possibility that the jury did not find he acted with reckless indifference to human life as that term is now understood, and thus the issue of his guilt under current murder law was not necessarily decided by the robbery-murder special circumstance finding. Finally, defendant contends that he could have made an offer of proof at a hearing on his petition to demonstrate that Christopher M. exhibited consciousness of guilt, and that this offer of proof would have further supported the conclusion that he established a prima facie case for relief under section 1172.6.

After briefing was complete in this matter, the California Supreme Court issued its decision in *People v. Curiel* (Nov. 27, 2023, S272238) ___ Cal.5th ___ (*Curiel*) [2023 Cal.LEXIS 6622]. We notified the parties to be prepared to discuss the impact of the *Curiel* decision at oral argument, and we requested supplemental briefing concerning the effect of *Curiel* on this matter.[4] As a result, defendant modified his issue preclusion

---

[4] The request for supplemental briefing specified the following issues: "What effect does the California Supreme Court's decision in *People v. Curiel* (Nov. 27, 2023, S272238) ___ Cal.5th___(*Curiel*) [2023 Cal.LEXIS 6622] have on defendant's arguments concerning the preclusive effect, if any, to be given to the jury's robbery-murder special circumstance finding? Specifically, what effect does *Curiel* have on defendant's arguments that issue preclusion should not apply because: the special circumstance allegation was not actually litigated; the issue of his guilt under current murder law was not necessarily decided at trial; his trial counsel lacked incentive to contest the special circumstance allegation; an unforeseeable change in the law took place after defendant's trial; and his trial counsel was faced with the 'relatively minor stakes' of the special circumstance allegation and 'the unforeseeability of the future importance of

argument, and additionally argued based on *Curiel* that the record of conviction does not conclusively establish defendant's guilt of every element of murder under current law.

We conclude the trial court properly denied defendant's section 1172.6 petition because the record of conviction demonstrates defendant is ineligible for relief as a matter of law. The error in not conducting a hearing before issuing this ruling was harmless.

## A. *Legal Principles*

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) " 'Under the felony-murder doctrine as it existed at the time of [defendant's] trial, "when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony," the defendant could be found guilty of the crime of murder, without any showing of "an intent to kill, or even implied malice, but merely an intent to commit the underlying felony." [Citation.] Murders occurring during certain violent or serious felonies were of the first degree, while all others were of the second degree. [Citations.]' [Citations.]" (*People v. Wilson* (2023) 14 Cal.5th 839, 868 (*Wilson*).)

Senate Bill 1437 "significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citations.]" (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) Senate Bill 1437 thus amended section 189 to provide that a participant in the perpetration or attempted perpetration of a listed felony in which a death occurs is liable for murder only

---

that issue'? [¶] Based on the guidance provided in *Curiel*, does the record of conviction, including the jury's robbery-murder special circumstance finding, 'conclusively establish[] every element of the offense' under current murder law? (*Curiel*, *supra*, ___Cal.5th at___ [p. *52].)"

if one of the following is proven: (1) the person was "the actual killer"; (2) the person, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree"; or (3) the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Senate Bill 1437 added section 1172.6, which provides an avenue for a person convicted in a case involving felony murder, murder under the natural and probable consequences doctrine, or another theory under which malice is imputed to a person based solely on that person's participation in a crime to petition the sentencing court to vacate the conviction and to be resentenced. "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' [Citation.]" (*Strong*, *supra*, 13 Cal.5th at p. 708.) "[T]he court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) "We independently review a trial court's determination on whether a petitioner has made a prima facie showing. [Citation.]" (*Ibid.*)

**B.** *Analysis*

### 1. Failure to conduct a hearing

Senate Bill 1437 contained no explicit requirement for the trial court to hold a hearing before determining whether a defendant has made a prima facie case for relief. However, effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) added a sentence to section 1172.6, subdivision (c) that states: "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." The trial court

7

issued its order on April 20, 2022, after the effective date of this change.  Thus, the trial court was required to hold a hearing before determining if defendant made a prima facie case for relief under section 1172.6.

Defendant argues the trial court acted outside its jurisdiction in issuing the order without conducting a hearing, asserting that:  (1) a section 1172.6 proceeding is a "special proceeding," and the trial court's jurisdiction in such a proceeding "is strictly limited by the terms and conditions of the authorizing statute"; and (2) because the hearing was provided for by statute, the trial court's failure to conduct the hearing means its order was outside its jurisdiction.  However, defendant cites no case that has specifically held that the failure to hold a hearing on a section 1172.6 petition at the prima facie stage causes the trial court's order denying the petition to be outside its jurisdiction.

In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), the California Supreme Court held that the trial court erroneously denied a section 1172.6 petition at the prima facie stage without first appointing counsel to represent the defendant, because "only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'  [Citation.]"  (*Lewis*, *supra*, at p. 957.)  However, the California Supreme Court held that the deprivation of the defendant's right to counsel under the statute was "state law error only," which is tested for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).  (*Lewis*, *supra*, at pp. 957–958.)  The *Lewis* court recognized some state statutory errors may amount to structural error that is not tested for prejudice, but it held the deprivation of counsel at the prima facie stage is not such a structural error, because "the prima facie stage under subdivision (c) is not similarly adversarial" to situations where deprivation of counsel does amount to structural error.  (*Id.* at p. 974; see *id*. at p. 973.)  Thus, our Supreme Court held that under the *Watson* standard, "a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she]

8

had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' [Citation.]" (*Lewis*, *supra*, at p. 974.)

In *People v. Hurtado* (2023) 89 Cal.App.5th 887, 889 (*Hurtado*), the Court of Appeal applied *Lewis* to affirm a trial court's denial of a section 1172.6 petition at the prima facie stage, even though the trial court did not appoint counsel or hold a hearing. The court reasoned that in enacting Senate Bill 775, "the Legislature knew that *Lewis* applied a harmless error standard in appropriate cases. The Legislature did not intend to replace the *Lewis* harmless error rule with an automatic reversal." (*Hurtado*, *supra*, at p. 892.) Thus, the court held: "Senate Bill No. 775 reaffirmed *Lewis* with modifications, preserving *Lewis*'s recognition of the trial court's authority to promptly screen out petitions by categorically ineligible defendants. The Legislature intended the *Lewis* harmless error standard to continue following the enactment of Senate Bill No. 775." (*Ibid.*)

Here, the trial court's error in not conducting a hearing before denying the petition was harmless. Defendant demonstrates no prejudice he suffered from the error. As discussed below, we conclude upon independent review that the record of conviction demonstrates as a matter of law that defendant is not entitled to relief under section 1172.6. Any argument defendant could make to the trial court in support of his petition can also be made to this court. In fact, defendant's arguments are broader on appeal than his arguments in briefing to the trial court. Defendant argues that if a hearing had been conducted on his petition, he would have made an offer of proof concerning evidence that he asserts demonstrates Christopher M.'s consciousness of guilt, but he has made this same offer of proof to this court, and we conclude below that this offered evidence would not change the fact that defendant's petition was properly denied. Thus, it is not reasonably probable that if the trial court had conducted the required hearing, defendant would have received a different result. (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

## 2. Effect of robbery-murder special circumstance finding

The jury found true the allegation that the murder was committed while defendant was engaged in or was an accomplice in a robbery, within the meaning of section 190.2, subdivision (a)(17). This special circumstance finding required the jury to conclude that defendant either intended to kill, or that defendant was a major participant in the crime who acted with reckless indifference to human life. Following recent changes to murder law, a participant in the perpetration of a listed felony (including robbery) remains liable for murder if the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

In *Strong*, *supra*, the California Supreme Court stated that the court's earlier decisions in *Banks* and *Clark* "for the first time provided substantial guidance on the meaning of the two relevant statutory phrases" of major participant and reckless indifference to human life. (*Strong*, *supra*, 13 Cal.5th at p. 703.) The *Strong* court noted that *Banks* "identified a series of considerations" that focused primarily on the definition of major participant, although *Banks* also discussed the meaning of reckless indifference to human life. (*Strong*, *supra*, at p. 705; see *id*. at p. 706.) The *Strong* court also noted that in *Clark*, the California Supreme Court reiterated *Banks*'s standard for major participant but focused on the reckless indifference to human life standard. (*Strong*, *supra*, at p. 706.) In *Clark*, the *Strong* court stated, the California Supreme Court "concluded that ' "reckless indifference," . . . encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his [or her] actions.' [Citation.]" (*Strong*, *supra*, at p. 706.) The *Strong* court stated that in *Clark*, "[m]uch as in *Banks*, we set out a nonexhaustive list of considerations relevant to this determination, including use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge

10

of any threat the confederates might represent, and efforts taken to minimize risks. [Citation.]" (*Strong*, *supra*, at p. 706.) Thus, the *Strong* court stated, "*Banks* and *Clark* both substantially clarified the law governing findings under Penal Code section 190.2, subdivision (d): *Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Id.* at pp. 706–707.)

The jury in *Strong* found true the section 190.2 felony murder special circumstance allegations that the defendant was a major participant who acted with reckless indifference to human life. (*Strong*, *supra*, 13 Cal.5th at p. 703.) This finding came before the *Banks* and *Clark* decisions. (*Strong*, *supra*, at p. 703.) The defendant then petitioned for section 1172.6 relief, and on appeal from the denial of the petition at the prima facie stage, the California Supreme Court held: "It is undisputed that when Senate Bill 1437 amended Penal Code section 189 to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in *Banks* and *Clark*. [Citations.] It is also undisputed that findings made after *Banks* and *Clark* ordinarily establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a prima facie case for relief. If a jury has determined beyond a reasonable doubt that a defendant was a major participant who acted with reckless indifference to human life, as those phrases are now understood and as the Legislature intended them to be understood when incorporating them into Penal Code section 189, then that defendant necessarily could still be convicted of murder under section 189 as amended. [Citations.]" (*Strong*, *supra*, 13 Cal.5th at p. 710.) Later, the court again stated that "post-*Banks* and *Clark* findings ordinarily do foreclose section 1172.6 resentencing," and that "the Legislature contemplated that many, and perhaps most, such findings would be given effect on resentencing." (*Id.* at p. 715.) However, the court held that findings made before *Banks* and *Clark* do not have such preclusive effect in section 1172.6 prima facie proceedings, because "*Banks* and *Clark*

represent the sort of significant change that has traditionally been thought to warrant reexamination of an earlier-litigated issue." (*Strong*, *supra*, at p. 717.)

Here, the jury's true finding on the robbery-murder special circumstance allegation was made on July 12, 2017, two years after the California Supreme Court's decision in *Banks* and one year after the *Clark* decision. Despite *Strong*'s statements that post-*Banks* and *Clark* section 190.2 special circumstance findings will ordinarily preclude section 1172.6 relief as a matter of law, defendant contends the trial court erred in denying his petition at the prima stage, for three reasons. First, he asserts *Strong* was based on the law of issue preclusion and elements required for issue preclusion to apply are not met in his case; thus, the special circumstance finding does not preclude defendant from establishing entitlement to section 1172.6 relief. Second, and relatedly, he argues issue preclusion does not apply because the jury instruction on the meaning of "reckless indifference to human life" was inadequate to show that the jurors "necessarily decided" defendant acted with reckless indifference, as that term is now used in section 189, subdivision (e)(3). Finally, defendant asserts that "[t]he statutory authority for [defendant] to adduce new or additional evidence that wasn't considered in the prior proceeding [citation] is also an exception to the People's claim of issue preclusion, and new evidence may be adduced at the prima facie case stage by way of offer of proof." We find none of these arguments persuasive to overcome *Strong*'s holding that a post-*Banks* and *Clark* special circumstance finding ordinarily forecloses section 1172.6 relief. Thus, we conclude the trial court correctly denied defendant's petition.

> a. *Issue preclusion's applicability to the robbery-murder special circumstance finding*

First, defendant argues that *Strong* was based on issue preclusion grounds, and that multiple elements of issue preclusion are not met in his case. "As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled. First, the issue sought to be precluded from

12

relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation.] And while these threshold requirements are necessary, they are not always sufficient: 'Even if the[] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles' of promoting efficiency while ensuring fairness to the parties. [Citations.] It is the burden of the party seeking to prevent relitigation based on prior findings to raise the defense and establish its elements. [Citation.]" (*Strong*, *supra*, 13 Cal.5th at p. 716.)

Defendant first asserts that issue preclusion should not apply because his trial counsel "lacked incentive" to contest the special circumstance allegation, and that trial counsel chose instead to assert defendant's innocence to the murder charge.[5] Second, defendant asserts that issue preclusion does not apply because an unforeseeable change in the law (Senate Bill 1437's creation of section 1172.6) took place after defendant's trial. As partial support for this position, defendant cites the following statement from *Strong*: "Even when the threshold requirements for issue preclusion are met, one well-settled equitable exception to the general rule holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue. [Citation.]" (*Strong*, *supra*, 13 Cal.5th at pp. 716–717.) Finally, defendant asserts that the combination of the "relatively minor stakes" of

---

[5] Defendant's brief later re-asserts that the "actually litigated" element of issue preclusion is not met because his trial counsel did not dispute that if defendant was found guilty of first degree murder, then the special circumstance allegation should also be found true. While defendant frames this second argument under a separate heading, we find it appropriate to treat this as one argument that the issue of whether defendant was a major participant who acted with reckless indifference to human life was not actually litigated in his trial.

the special circumstance allegation in his trial and "the unforeseeability of the future importance of that issue" means that issue preclusion should not apply.

We conclude that the jury's special circumstance finding has preclusive effect in defendant's section 1172.6 petition. *Strong* did not specifically state that full issue preclusion requirements necessarily apply in the section 1172.6 context; it stated that one of the "background principles" that framed its analysis was that "[i]n general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel." (*Strong*, *supra*, 13 Cal.5th at p. 715.) The Attorney General argues that section 1172.6 "obviates the need to rely on traditional issue preclusion, because the statutory scheme makes clear that certain factual findings must be considered by the court when evaluating a prima facie showing." Decisions by the Courts of Appeal have taken varying approaches as to whether full issue preclusion requirements apply in the context of a section 1172.6 prima facie determination. (See, e.g., *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1127 (*Bratton*) ["We conclude that the Legislature intended that issue preclusion apply at the prima facie stage . . . ."]; *People v. Arnold* (2023) 93 Cal.App.5th 376, 385 [stating that the analysis in *Strong* "suggests that the collateral estoppel doctrine does apply to section 1172.6 proceedings" but not deciding the issue]; (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1085 ["[W]e decline to decide whether issue preclusion can ever apply in the context of a section [1172.6] proceeding."]; *People v. Cooper* (2022) 77 Cal.App.5th 393, 413 [because collateral estoppel in the criminal context is a component of the double jeopardy clause, "it is not clear whether collateral estoppel principles apply in section [1172.6] proceedings."].) Recently, our Supreme Court in *Curiel* observed that in *Strong*, "we determined that general principles of issue preclusion informed our consideration of the effect of prior jury findings in a resentencing proceeding under section 1172.6." (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 27], citing *Strong*, *supra*, at pp. 715–716.) The *Curiel* court stated: "Without deciding whether this doctrine applies wholesale to criminal

resentencing proceedings generally, or even section 1172.6 proceedings specifically, we continue to believe its contours are informative in this context and rely on them again here." (*Curiel*, *supra*, at p. ___ [p. 27].) Thus, the *Curiel* court analyzed whether issue preclusion applied to a prior jury gang-murder special circumstance finding using traditional elements of issue preclusion. (*Id.* at pp. ___ [pp. 28–53].)

We follow *Curiel*'s approach by applying the elements of traditional issue preclusion to determine that the jury's robbery-murder special circumstance has preclusive effect in the section 1172.6 proceedings. We also follow *Strong*'s holding that post-*Banks* and *Clark* special circumstances findings will "ordinarily establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a prima facie case for relief." (*Strong*, *supra*, at p. 710.) Even if all the traditional requirements for issue preclusion to apply must be met in this context, the jury's special circumstance finding establishes that defendant acted with the requisite mens rea necessary for murder liability under current law.

Defendant's opening brief argued that the special circumstance allegation was not actually litigated at trial, because he chose to assert he was not guilty of the murder and thus lacked incentive to contest the special circumstance allegation. However, "[a]n issue is actually litigated '[w]hen [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined* . . . .' [Citation.]" (*People v. Sims* (1982) 32 Cal.3d 468, 484.) In determining whether an issue was actually litigated, " '[i]t is the opportunity to litigate that it is important in these cases, not whether the litigant availed himself or herself of the opportunity.' [Citation.]" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 872.) Thus, in *Curiel*, the California Supreme Court held that the jury's previous gang-murder special circumstance finding was actually litigated, rejecting Curiel's argument that "his intent to kill was not actually litigated because his counsel did not specifically address the special circumstance in closing argument." (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 30].) The *Curiel* court stated: " 'The rule that collateral

15

estoppel applies only to those issues that were actually or fully litigated in the prior proceeding does not refer to the quality or quantity of argument or evidence addressed to an issue. . . . Issue preclusion because of a prior adjudication results from the resolution of a question in issue, not from the litigation of specific arguments directed to the issue.' [Citation.]" (*Curiel*, *supra*, at p. ___ [p. 31].) Thus, the court in *Curiel* held: "The decision by Curiel's counsel not to specifically address the special circumstance was a matter of trial strategy, which 'would no more defeat the plea of collateral estoppel than the failure of a litigant to introduce relevant available evidence in any other situation.' [Citation.]" (*Ibid.*) Defendant acknowledges that *Curiel* "directly rejected" his argument that the special circumstance allegation was not actually litigated. We therefore conclude that because the special circumstance allegation was alleged in the information, evidence concerning the allegation was presented at trial, the issue was presented to the jury, and the allegation was found to be true by the jury, the special circumstance allegation was actually litigated. The decision by defendant's trial counsel not to present evidence or argument focused on the robbery-murder special circumstance allegation was a matter of trial strategy, which does not defeat the applicability of issue preclusion.[6]

Defendant's assertion that issue preclusion does not apply because an unforeseeable change in the law occurred after his trial is equally not persuasive. He argues: "Had counsel in 2017 been able to foresee the enactment of [Senate Bill] 1437 in 2018, he would have had much more reason to litigate the special circumstance, because

---

[6] Defendant's opening brief cited *People v. Gonzalez* (2021) 65 Cal.App.5th 420 (*Gonzalez*) to support his argument that the special circumstance was not actually litigated. In *Gonzalez*, the Court of Appeal held that the defendant's section 1172.6 petition was not precluded by the jury's prior robbery-murder special circumstance finding, reasoning: "Because Gonzalez made no effort to litigate the special circumstance, and had no reason to do so, the 'actually litigated' element of collateral estoppel is not satisfied by the jury's true finding." (*Gonzalez*, *supra*, at p. 433.) However, *Curiel* disapproved of *Gonzalez*, holding, "*Gonzalez* failed to appreciate that the dispositive question is a litigant's opportunity to litigate, not the litigant's actual conduct at trial." (*Curiel*, *supra*, ___ Cal.5th at p. ___, fn. 3 [p. 31, fn. 3].)

16

he would have known the issue of intent to kill would become far more important a year later. Of course, counsel in 2017 lacked psychic powers. Thus, the unforeseeability of a new proceeding that hadn't been created at the time of the original one, in which the allegedly precluded issue (intent to kill) achieved equally unforeseeable extra importance, falls within the 'change of law exception' to issue preclusion."

*Curiel* disposes of this argument, as *Curiel* held that a substantively identical argument to the one defendant raises here "is plainly foreclosed by our opinion in *Strong*." (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 45].) The *Curiel* court held: "Indeed, it was undisputed in *Strong* that jury findings made under the current governing substantive legal standard (i.e., post-*Banks* and *Clark*) would 'ordinarily establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a prima facie case for relief.' [Citation.] Senate Bill 1437 does not itself support an equitable exception to issue preclusion. To the contrary, issue preclusion will 'ordinarily' apply in such proceedings. [Citation.]" (*Id.* at p. ___ [pp. 45–46].) This court provided defendant the opportunity in supplemental briefing to address the impact of *Curiel* on this aspect of his argument, and defendant declined to do so. We therefore follow *Curiel* and reject defendant's argument that the enactment of Senate Bill 1437 constitutes an unforeseeable change in the law that warrants an exception to the application of issue preclusion.

Finally, we reject defendant's assertion that issue preclusion should not apply because of the combination of the "relatively minor stakes" of the special circumstance allegation in his trial and "the unforeseeability of the future importance of that issue." This argument appears to combine defendant's "actually decided" and "change in the law" arguments, arguments we have already rejected. *Strong* gave no indication that issue preclusion should not apply in defendant's situation; instead, it held that "findings made after *Banks* and *Clark* ordinarily establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a

17

prima facie case for relief," despite the change in the law produced by Senate Bill 1437. (*Strong*, *supra*, 13 Cal.5th at p. 710.)

We recognize that "even where the minimal prerequisites for invocation of the doctrine are present, collateral estoppel ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' [Citations.]" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829.) We see no such policy considerations that outweigh the application of issue preclusion here. Defendant argues that issue preclusion should not apply because his trial counsel lacked incentive to contest the special circumstance allegation, instead choosing to assert defendant's innocence to the murder charge. The *Bratton* court held that an exception to issue preclusion may apply where " 'the party sought to be precluded . . . did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.' " (*Bratton*, *supra*, 95 Cal.App.5th at p. 1117, quoting Rest.2d Judgments, § 28(5).) However, *Bratton* rejected a similar argument to the one defendant makes here: that the defendant lacked the incentive to contest whether he was the shooter because he chose to contest his involvement in the underlying crimes. (*Bratton*, *supra*, at pp. 1121–1122.) The court held that "trial counsel did have an incentive to contest this issue; evidently, he simply made a tactical decision not to." (*Id.* at p. 1105.) *Curiel* also rejected the argument that a lack of incentive to contest a special circumstance allegation justifies an exception to issue preclusion, holding both that under one theory pursued by the prosecution in that case, intent to kill was an element of the crime of murder itself, and that "the special circumstance finding would have collateral consequences in any future appeal or petition for writ of habeas corpus [citation] and could impact a future request for pardon or commutation from the Governor." (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 44].) Thus, the *Curiel* court held: "We therefore disagree with Curiel that the significance of the special circumstance

18

finding was 'minimal' and it should not be given preclusive effect." (*Id.* at p. ___ [p. 44], fn. omitted.)

Here, defendant not only had an incentive to contest the special circumstance allegation, his trial counsel actually did assert in closing argument that defendant was not guilty of the special circumstance allegations, including the robbery-murder allegation.[7] Moreover, trial counsel's closing argument centered on assertions about the lack of evidence that defendant was the stabber and evidence of defendant's intoxication. Defendant does not adequately explain on appeal how his defense to the murder charge would be inconsistent with contesting the robbery-murder special circumstance allegation in more detail than he did. Defendant had the opportunity to contest the robbery-murder special circumstance allegation. To the extent that he did not contest the allegation in more detail, this represents a "matter of trial strategy" on his part, and issue preclusion still applies. (*Curiel*, *supra*, at p. ___ [p. 31].) Once again, this court provided defendant the opportunity in supplemental briefing to address the impact of *Curiel* on this aspect of his argument, and defendant declined to do so. We therefore follow *Curiel* in holding that issue preclusion applies despite defendant's argument regarding the stakes of the special circumstance allegation and the unforeseeability of the future importance of this issue.

Defendant had the opportunity and adequate incentive to contest the special circumstance allegation. The jury, having considered the evidence set forth by the

_____

[7] Defense counsel asserted in closing argument that evidence of defendant's voluntary intoxication "applies to all the charges, all four counts, special circumstance alleged, which is the robbery, which relates to first-degree murder if you get there." Later, defense counsel asserted that expert testimony regarding defendant's level of intoxication raised a reasonable doubt as to "[f]irst-degree murder in the special circumstance robbery and the robberies." Defense counsel also argued, after asserting that evidence of defendant's intoxication demonstrated he did not act with premeditation or deliberation, that "you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty or the special allegations, special circumstance and allegations are true."

19

prosecution and the defense, determined that defendant's actions demonstrated that he acted with intent to kill or was a major participant in an underlying felony who acted with reckless indifference to human life. Our Supreme Court has repeatedly stated that a jury's previous findings are to be used in determining whether a defendant has made a prima facie showing of entitlement to section 1172.6 relief. (*Lewis*, *supra*, 11 Cal.5th at p. 957; *Strong*, *supra*, at p. 715; *Wilson*, *supra*, 14 Cal.5th at p. 875; *Curiel*, *supra* ___ Cal.5th at p. ___ [pp. 45–46].) We therefore conclude that even if traditional issue preclusion principles apply, the jury's special circumstance finding has preclusive effect in the section 1172.6 proceedings.

b. *Jury instructions on "reckless indifference to human life"*

Even though in *Strong*, our Supreme Court stated that it is "undisputed that findings made after *Banks* and *Clark* ordinarily establish a defendant's ineligibility for resentencing" (*Strong*, *supra*, 13 Cal.5th at p. 710), defendant argues that this principle does not apply to him because the jury was instructed that reckless indifference to human life exists when a defendant knowingly engages in criminal activity that he or she knows involves a "grave risk of death." Defendant argues that this instruction did not capture the " 'deeper understanding' " of the term "reckless indifference to human life" as articulated in *Clark*, and thus "it is not certain that the prior jury decided the issue of reckless indifference under the heightened *Banks*/*Clark* standard that the Legislature then incorporated into [Senate Bill] 1437." Because of this, defendant argues, the jury did not necessarily decide that defendant acted with reckless indifference to human life, as that term is now understood. In supplemental briefing, defendant relies on *Curiel* to support this argument, arguing: "*Curiel* held that 'necessarily decided' can only be determined based on the jury's actual instructions." Thus, defendant argues that the issue of his guilt under current murder law was not necessarily decided by the jury's robbery-murder special circumstance finding, building off his issue preclusion argument.

20

CALCRIM No. 703 is used to instruct juries as to the intent requirement for a murder special circumstances allegation where the defendant is found not to be the actual killer. Under the version of this instruction used in defendant's case, the trial court instructed the jury as follows: "In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove either that the defendant intended to kill, or the People must prove all of the following: [¶] 1. The defendant's participation in the crime began before or during the killing; AND [¶] 2. The defendant was a major participant in the crime; AND [¶] 3. When the defendant participated in the crime, he acted with reckless indifference to human life." This instruction listed several factors, in accordance with *Banks*, the jury could consider in determining whether defendant was a major participant in the robbery. In defining "reckless indifference to human life," the instruction provided: "A person acts with reckless indifference to human life when he knowingly engages in criminal activity that he knows involves a grave risk of death." The instructions listed no factors for the jury to consider in deciding whether defendant acted with reckless indifference to human life.

The California Supreme Court in *Clark* held the definition of "reckless indifference to human life" "encompasses both subjective and objective elements," and the mere fact that a robbery involves a gun, "on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance." (*Clark*, *supra*, 63 Cal.4th at p. 617, fn. omitted.) The court in *Clark* laid out several "case-specific factors" that can assist in determining whether an aider and abettor acted with reckless indifference to human life. (*Id.* at p. 618; see *id*. at pp. 618–622.) The court in *Clark* did not hold that a jury must be instructed on these factors when considering a special circumstance allegation, and it stated, " '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' [Citation.]" (*Id.* at p. 618.)

21

In 2020, CALCRIM No. 703 was revised to list in brackets the *Clark* factors the jury may consider in determining whether the defendant acted with reckless indifference to human life.[8]  Bench notes to the instruction state that "[t]he trial court should determine whether the *Clark* factors need be given," and "[t]he court may give the bracketed definition of reckless indifference if requested."  (Jud. Council of Cal., Crim. Jury Insts. (2020 ed.) Bench Notes to CALCRIM No. 703.)

In *People v. Farfan* (2021) 71 Cal.App.5th 942 (*Farfan*), the Court of Appeal held that because the jury found a robbery-murder special circumstance allegation true, the defendant was ineligible for section 1172.6 relief as a matter of law.  (*Farfan*, *supra*, at p. 951.)  The *Farfan* decision, which was issued before *Strong*, noted that at the time, a split existed as to whether a pre-*Banks* and *Clark* special circumstance finding caused a section 1172.6 petitioner to be ineligible for relief as a matter of law.  (*Farfan*, *supra*, at p. 955.)  However, in *Farfan*, the special circumstance finding was made after *Banks* and *Clark* were decided.  (*Farfan*, *supra*, at p. 955.)  The *Farfan* court noted that the defendant's jury was not instructed with the *Banks* and *Clark* factors; however, it held that the trial court was not required to instruct on the *Banks* and *Clark* factors that were later incorporated into CALCRIM No. 703.  (*Farfan*, *supra*, at p. 955.)  Thus, the court

---

[8] The full added language in CALCRIM No. 703 as to the definition of reckless indifference to human life reads as follows: "[When you decide whether the defendant acted with *reckless indifference to human life*, consider all the evidence.  No one of the following factors is necessary, nor is any one of them necessarily enough, to determine whether the defendant acted with reckless indifference to human life.  Among the factors you may consider are:  [¶]  [• Did the defendant know that [a] lethal weapon[s] would be present during the *<insert underlying felony>*?]  [¶]  [• Did the defendant know that [a] lethal weapon[s] (was/were) likely to be used?]  [¶]  [• Did the defendant know that [a] lethal weapon[s] (was/were) used?]  [¶] [• Did the defendant know the number of weapons involved?]  [¶]  [• Was the defendant near the person(s) killed when the killing occurred?]  [¶]  [• Did the defendant have an opportunity to stop the killing or to help the victim(s)?]  [¶]  [• How long did the crime last?]  [¶]  [• Was the defendant aware of anything that would make a coparticipant likely to kill?]  [¶]  [• Did the defendant try to minimize the possibility of violence?]  [¶]  . . .  [¶]  [• *<insert any other relevant factors>*]]."  (Jud. Council of Cal., Crim. Jury Insts. (2020 ed.) CALCRIM No. 703.)

held, "even though appellant's jury was not instructed with the *Banks* and *Clark* factors, this case falls outside the split of authority to be resolved by our Supreme Court in *Strong*. The jury's robbery-murder special-circumstance finding constitutes a valid finding beyond a reasonable doubt that appellant had the intent to kill or was a major participant in the robbery who acted with reckless disregard for human life, and that finding makes appellant ineligible for relief under section [1172.6] as a matter of law." (*Id.* at pp. 955–956.)

*Strong* did not disapprove of *Farfan*. Instead, the California Supreme Court cited *Farfan* for the following statement: "If a jury has determined beyond a reasonable doubt that a defendant was a major participant who acted with reckless indifference to human life, as those phrases are now understood and as the Legislature intended them to be understood when incorporating them into Penal Code section 189, then that defendant necessarily could still be convicted of murder under section 189 as amended." (*Strong*, *supra*, 13 Cal.5th at p. 710.)

Defendant's argument seems to assert that if a jury is not instructed in accordance with the later-added *Clark* factors, then a special circumstance finding cannot preclude relief under section 1172.6, because the jury might not have found under the "grave risk" language in the instruction that the defendant acted with reckless indifference to human life in the way *Clark* defined that term. However, *Strong* reached no such holding, instead broadly concluding that "post-*Banks* and *Clark* findings ordinarily do foreclose section 1172.6 resentencing," and that "the structure of the statute—which permits trial courts to consult the record of conviction to determine whether the defendant has made out a prima facie case of eligibility [citation], and which notably does not open resentencing to every previously convicted murder defendant—strongly suggests the Legislature contemplated that many, and perhaps most, such findings would be given effect on resentencing." (*Strong*, *supra*, 13 Cal.5th at p. 715.) Nothing in *Strong* indicates that its holding was conditioned on the jury being instructed in accordance with

instructions that were updated in light of *Banks* and *Clark*. In fact, the *Strong* court specifically acknowledged: "The jury instruction on the special circumstance, CALCRIM No. 703, was not amended after *Banks* and *Clark* to require instruction on the factors discussed. Instead, these factors were included in brackets as optional additions for the trial court to consider giving in its discretion." (*Strong*, *supra*, at p. 719, fn. 4.) The *Strong* court held that pre-*Banks* and *Clark* special circumstance findings could not be given conclusive effect for reasons that went beyond the instructions, stating: "Although the mandatory instructions did not change in the wake of *Banks* and *Clark*, much else about the trial environment did. For one, the arguments available to counsel changed significantly after this court offered a range of guiding factors and made clear that simple participation in, e.g., a 'garden-variety armed robbery' was not sufficient, without more, to establish the truth of the felony-murder special circumstance. [Citation.] The newly articulated guiding factors might also have altered what evidence defense counsel would have sought to introduce. And more broadly, the clarifications *Banks* and *Clark* offered about the height of the bar needed to prove a felony-murder special-circumstance finding might have fundamentally altered trial strategies, causing some defendants to focus on proving they were guilty at most of a noncapital homicide once *Banks* and *Clark* created more daylight between the proof required to convict of murder and the proof required convict of special circumstance murder. As for instruction, after *Banks* and *Clark*, defense counsel could have asked that optional additional instruction on the *Banks* and *Clark* factors be given to guide the jury in its deliberations [citation], with the possibility that different outcomes might have resulted." (*Strong*, *supra*, at pp. 719–720.)

While defendant's jury was not instructed in accordance with the factors now made optional in CALCRIM No. 703, the concerns *Strong* articulated about granting pre-*Banks* and *Clark* special circumstance findings conclusive effect are not present here, where the jury's finding was made well after *Banks* and *Clark*. Defendant was permitted

to structure his trial strategy and arguments at trial in accordance with *Banks* and *Clark*. He could have asked the trial court to instruct the jury based on the factors *Clark* had articulated a year earlier, but he chose not to do so. Nothing in *Strong* requires a post-*Banks* and *Clark* special circumstance finding to have been based on updated instructions. In fact, *Strong* specifically held that many if not most post-*Banks* and *Clark* special circumstance findings would have conclusive effect even though CALCRIM No. 703 does not require instruction in accordance with factors articulated in *Banks* and *Clark*. To the extent defendant's argument can be interpreted as asserting the jury was improperly instructed, a section 1172.6 petition is not the procedure to raise this issue. As the Court of Appeal recently held in a similar context in *People v. Burns* (2023) 95 Cal.App.5th 862: "Indeed, all the case law on which Burns relies was decided well before the jury verdict in his trial. [Citation.] His remedy for any alleged instructional error that affected the verdict was his appeal from the judgment of conviction. His failure to raise the argument on direct appeal forfeited that claim [citation], and the subsequent petition process created by the Legislature when it enacted Senate Bill No. 1437 did nothing to change the applicable law so as to resurrect an argument he had already abandoned." (*Id.* at pp. 867–868, fns. omitted.) Defendant raised an instructional error claim in his direct appeal, but he did not challenge the CALCRIM No. 703 instruction. In accordance with *Strong* and *Farfan*, the jury's post-*Banks* and *Clark* special circumstance finding precludes defendant from section 1172.6 relief as a matter of law.

At oral argument and in supplemental briefing, defendant cited the California Supreme Court's decision in *Curiel* as support for his position that the jury's robbery-murder special circumstance finding does not conclusively establish his guilt under current murder law. Defendant cites the following statement by the court in *Curiel*: "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to Section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record.

25

[Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 52].) Defendant argues that under *Curiel*, "a preclusion question requires reference to what was <u>actually</u> before the jury, not principles of law that appear in the Official Reports but the jury never heard." We conclude that *Curiel* does not alter *Strong*'s holding that "many, and perhaps most," post-*Banks* and *Clark* felony murder special circumstance findings "would be given effect on resentencing." (*Strong*, *supra*, 13 Cal.5th at p. 715.)

In *Curiel*, our Supreme Court noted that the issue of the defendant's intent to kill was established by the jury's gang-murder special circumstance finding. The court held: "The record here shows that Curiel's intent to kill was actually litigated and necessarily decided. The prosecution alleged the gang-murder special circumstance, which included an intent to kill element, and Curiel put all elements of the special circumstance at issue by pleading not guilty. [Citation.] The court instructed the jury it could not find the special circumstance allegation true unless it determined Curiel 'intended to kill.' By finding the special circumstance allegation true, the jury necessarily found beyond a reasonable doubt that Curiel intended to kill. [Citation.]" (*Curiel*, *supra*, ___ Cal.5th at p. ___ [pp. 29–30].) Thus, *Curiel* supports the conclusion that the jury necessarily decided that defendant acted either with the intent to kill or with reckless indifference to human life.

*Curiel* then held even though the jury's special circumstance finding was given preclusive effect in the section 1172.6 proceedings, the jury's finding did not necessarily establish the defendant's guilt under current murder law. The court stated: "Although we conclude the jury's intent to kill finding should be given preclusive effect, it remains to be determined what that effect should be, i.e., how a trial court should apply the intent to kill finding in resentencing proceedings under section 1172.6." (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 46].) The court held that the special circumstance finding was "certainly relevant to the trial court's consideration of a petitioner's prima facie

showing," but that it was not dispositive, as "an intent to kill finding does not itself conclusively establish that a petitioner is ineligible for relief." (*Id.* at pp. ___ [pp. 46–47].) In *Curiel*, the defendant's section 1172.6 petition alleged, among other matters, that he had been convicted of first degree murder under the natural and probable consequences doctrine and that he could not be convicted of murder under current law, while the prosecutor argued at trial that Curiel was guilty under current murder law as a direct aider and abettor of the murder and also under the natural and probable consequences doctrine. (*Curiel*, *supra*, at pp. ___ [pp. 2, 13].) The California Supreme Court noted that Senate Bill 1437's amendments to section 188 "did not simply 'add the element of malice aforethought' to existing theories of murder liability," but rather "eliminated the doctrine of natural and probable consequences in its entirety . . . ." (*Curiel*, *supra*, at p. ___ [p. 50].) Thus, the *Curiel* court stated: "[A]fter the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory. Murder liability requires a different, valid theory, such as direct aiding and abetting. [Citation.] And it requires a different, valid theory *because of* the changes to section 188 in Senate Bill 1437. It was those changes that persuaded this court that the doctrine of natural and probable consequences could no longer support murder liability, with or without malice. [Citation.] Consequently, a petitioner who alleges that he or she could not currently be convicted because of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' (§ 1172.6, subd. (a)(3)) puts at issue all elements of the offense under a valid theory." (*Id.* at pp. ___ [pp. 50–51].)

Having held that a section 1172.6 petition puts at issue all elements of the offense under a valid theory, the California Supreme Court held that the record of conviction in *Curiel* did not conclusively establish that all elements of a still-valid theory of murder liability were met. It held that the jury's special circumstance finding of the defendant's

27

intent to kill did not conclusively establish the defendant's guilt under a still-valid theory, stating that intent to kill "is only one element. It does not by itself establish any valid theory of liability. [Citation.]" (*Curiel, supra*, ___ Cal.5th at p. ___ [p. 52].) For example, the *Curiel* court noted that under a direct aiding and abetting theory, the record of conviction would need to conclusively establish that the defendant aided in the commission of an offense perpetrated by another with knowledge of the direct perpetrator's unlawful intent and with an intent to assist in achieving those unlawful ends, while under a theory of implied malice, the record must conclusively establish that the aider and abettor aided in the commission of a life-endangering act with knowledge that the perpetrator intended to commit the act, with intent to aid the perpetrator in the commission of the act, with knowledge that the act was dangerous to human life, and with conscious disregard for human life. (*Id.* at pp. ___ [pp. 52–53].) The *Curiel* court held: "A finding of intent to kill does not, standing alone, cover all of the required elements. It does not itself show that a petitioner like Curiel is liable for murder under any valid theory." (*Id.* at p. ___ [p. 53].)

Our Supreme Court noted in *Curiel* that "[o]ther aspects of the record, such as additional jury findings, might be relevant to the remaining elements of the relevant homicide offense and conclusively refute a petitioner's allegation that he or she could not be convicted of murder under current law." (*Curiel, supra*, ___ Cal.5th at p. ___ [p. 53].) However, the court held that based on the record of conviction before it, "the jury did not necessarily find the requisite mens rea for direct aiding and abetting liability," because intent to kill "standing alone is insufficient to render a person culpable for another's acts" under a direct aiding and abetting theory. (*Id.* at pp. ___ [pp. 62–63].)

The instant matter is readily distinguishable from *Curiel*, and the record of conviction—including the robbery-murder special circumstance finding—conclusively establishes defendant's guilt under current murder law. *Curiel* involved a defendant who may have been convicted under the natural and probable consequences doctrine, a

28

doctrine that *Curiel* observed was "eliminated" by Senate Bill 1437. (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 50].) Conversely, the record in the instant matter conclusively establishes that defendant was not convicted under the natural and probable consequences doctrine. The jury was not instructed on the natural and probable consequences doctrine. Instead, the trial court instructed the jury that the jury could find defendant guilty of first degree murder under the theory of felony murder. The jury returned a true finding on the robbery-murder special circumstance allegation. Defendant's brief to the trial court concerning his section 1172.6 petition analyzed whether he remained liable for murder under a felony-murder theory; it did not assert he was convicted under the natural and probable consequences doctrine. The trial court likewise held: "by finding the felony murder special circumstances true, Alvarez's jury made precisely the same findings it would be required to make in order to convict him of felony murder under current law."

Senate Bill 1437 did not eliminate the felony-murder rule, as it did with the natural and probable consequences doctrine. Instead, Senate Bill 1437 amended section 189, subdivision (e) to provide that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) The trial court instructed defendant's jury that to find the robbery-murder special circumstance allegation true, the jury had to find that defendant intended to kill or he was a major participant in the crime who acted with reckless indifference to human life. If the jury concluded that defendant was a major participant who acted with reckless indifference to human life, then defendant remains liable for murder under amended section 189, subdivision (e)(3). If

29

the jury concluded that defendant aided and abetted Christopher M. with the intent to kill, then defendant remains liable for murder under amended section 189, subdivision (e)(2). No further elements remain to be established by the jury's robbery-murder special circumstance finding.

Because the instant case involves the felony-murder rule and not the natural and probable consequences doctrine, *Curiel* is distinguishable. Instead, *Strong* controls this matter, as *Strong* dealt with the preclusive effect of a robbery-murder special circumstance finding in a prosecution under the felony-murder rule. (*Strong*, *supra*, 13 Cal.5th at p. 703.) *Curiel* recognized that its holding was limited and would not necessarily apply in other settings, stating: "[W]e note that our holding today does not necessarily apply to other cases where the jury found intent to kill, or even other cases where the jury found true the gang-murder special circumstance. The jury instructions in other cases might be materially different, and they might therefore have required different factual findings by the jury. We hold only that under the jury instructions here, the findings the jury must have made are insufficient to conclusively establish that Curiel is liable for murder under current law." (*Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 69].) *Curiel* involved a different special circumstance finding under different theories of murder under current law. Regardless of the fact that the jury was not instructed in accordance with the *Banks* and *Clark* factors – factors that *Strong* recognized are not mandatory and that *Strong* indicated are not required to be instructed upon for a felony murder special circumstance finding to be given preclusive effect – the jury necessarily found that defendant acted with intent to kill or as a major participant who acted with reckless indifference to human life, as those terms are now defined. The jury's robbery-murder finding in the instant matter "establish[es] conclusively that the defendant is ineligible for relief, " and thus the trial court did not err in denying defendant's petition at the prima facie stage. (*Strong*, *supra*, 13 Cal.5th at p. 708.)

### c. *Defendant's offer of proof on consciousness of guilt*

Finally, defendant argues that he could have made an offer of proof at a hearing on his petition to demonstrate that Christopher M. exhibited consciousness of guilt, and that this offer of proof would have further supported the conclusion that he established a prima facie case for relief under section 1172.6.  He cites numerous contradictions Christopher M. provided in an interview with police as evidence of Christopher M.'s consciousness of guilt, and he argues that the issue of whether this evidence was admissible was not placed at issue in his original appeal.  Defendant asserts that the offer of proof of this evidence "more than raises a reasonable doubt of [his] guilt of murder under current law."

We find no merit in this argument.  Nothing in section 1172.6, subdivision (c) permits a trial court to consider evidence outside the record of conviction at the prima facie stage.  Instead, the California Supreme Court in *Lewis* held that "the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief," and that " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.)  "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]" (*Strong*, *supra*, 13 Cal.5th at p. 708.)

Nothing in section 1172.6 supplies the trial court the authority to consider the offer of proof of Christopher M.'s police interview.  Even assuming the trial court could have entertained defendant's offer of proof at the prima facie stage, however, nothing in Christopher M.'s police interview negates the jury's special circumstance finding that

31

defendant either had intent to kill or was a major participant in an underlying felony who acted with reckless indifference to human life. At most, the interview indicates Christopher M.'s shifting accounts of the robbery-murder and thus his consciousness of guilt. Defendant seems to assert that this evidence would help establish that Christopher M. was the person who stabbed the victim, but the jury's not true finding to the allegation that defendant used a knife in the murder and the robbery of the murder victim is already part of the record of conviction. The offer of proof does not demonstrate defendant did not act with intent to kill or reckless indifference to human life, a matter established as a matter of law by the jury's special circumstance finding. If Christopher M.'s interview has any relevance, that relevance arose at defendant's trial, not at the prima facie stage of defendant's section 1172.6 petition. " 'The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*Farfan*, *supra*, 71 Cal.App.5th at p. 947.)

### 3. Conclusion

The trial court's error in not conducting a hearing before denying the petition was harmless, as it is not reasonably probable that defendant would have received a different result if the trial court had conducted the required hearing. Even if full issue preclusion principles apply, the jury's post-*Banks* and *Clark* special circumstance establishes conclusively that defendant is ineligible for relief under section 1172.6, and thus the trial court correctly denied defendant's petition at the prima facie stage. This conclusion is not affected by the instructions the jury received as to the definition of "reckless indifference to human life," or by the offer of proof defendant asserts he wished to make to the trial court. The record of conviction, including the jury's robbery-murder special circumstance finding, establishes as a matter of law that defendant either acted with intent to kill or was a major participant in an underlying felony who acted with reckless

indifference to human life, and thus he remains liable for felony murder under current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.)[9]

## IV. DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

---

[9] Our resolution of this matter means we need not address two arguments raised by the Attorney General:  first, that defendant is judicially estopped from asserting entitlement to section 1172.6 relief because in a supplemental filing in his direct appeal, he asserted that section 1172.6 did not apply to him; and second, that the jury's true finding that the murder was committed for the benefit of, at the direction of, or in association with a criminal street gang necessarily means that the jury found defendant acted with the intent to kill.

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:




_____
GREENWOOD, P.J.




_____
BROMBERG, J.




*People v. Alvarez*
**H050011**